***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner:
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. An employee-employer relationship existed at the time of the alleged incident.
2. The City of Durham was insured at the time of Plaintiff's latest incident by Compensation Claims Solutions. *Page 2 
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged incident, the employer employing the requisite number of employees to be bound under the provisions of said Act.
4. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and the subject matter.
5. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of parties.
6. Plaintiff suffered a compensable injury on June 12, 2000 while working in the course of her employment with the employer.
7. Plaintiff's average weekly wage is $655.29 with a compensation rate of $436.88.
 ***********
The following were submitted at the hearing before the Deputy Commissioner:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement
2. Stipulated Exhibit Number 2, Medical Records
 ***********
The following were received at the hearing before the Deputy Commissioner:
 DEPOSITIONS
1. Oral deposition of Patrick Clifford, Ph.D., taken on May 5, 2008 with Plaintiff's Exhibit Number 1 attached to the deposition transcript.
2. Oral deposition of Peter Bronec, M.D., taken on May 6, 2010.
3. Oral deposition of Lisa Hall, R.N., taken on May 6, 2010 with Defendants' Exhibit Number 1 attached to the deposition transcript. *Page 3 
4. Oral deposition of Vern C. Juel, M.D., taken on May 7, 2010 with Exhibit Number 1 attached to the deposition transcript.
5. Oral deposition of Kimberly Barrie, M.D., taken on May 19, 2010.
6. Oral deposition of David Johnson, M.D., taken on June 11, 2010.
7. Oral deposition of Scott Sanitate, M.D., taken on June 8, 2010.
8. Oral deposition of Jon Kolkin, M.D., taken on June 15, 2010 with Defendants' Exhibit Number 1 attached to the deposition transcript.
9. Oral deposition of Diane Allen, M.D., taken on June 24, 2010.
10. Oral deposition of Janice Haskins taken on June 28, 2010.
11. Oral deposition of Janice Haskins taken on July 29, 2010 with Plaintiff's Exhibits Numbered 1, 2 and 3 attached to the deposition transcript.
 ***********
The following were submitted at the hearing before the Deputy Commissioner as:
 ISSUES
1. Whether Plaintiff is entitled to indemnity benefits from the time of her termination from employment with Defendant-Employer and continuing until Plaintiff returns to work or until further Order of the Commission?
2. Whether Plaintiff's trigger thumb condition is a compensable work-related injury?
3. What additional medical treatment is Plaintiff entitled to receive?
 *********** EVIDENTIARY ISSUES *Page 4 
Following the Notice of Appeal to the Full Commission filed by Plaintiff, on April 28, 2011, Plaintiff filed a Motion to Receive Additional Evidence. The Full Commission hereby DENIES the Motion.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 55 years old. After graduating from high school, Plaintiff attended Durham Technical Community College, where she completed about two years of the Secretarial Science Program. Prior to her employment with Defendant-Employer, Plaintiff performed primarily secretarial work.
2. From July 6, 1996 through October 5, 2001 Plaintiff worked for Defendant-Employer as a Human Resource Technician in the Department of Transportation. Plaintiff developed a compensable bilateral carpal tunnel condition on June 12, 2000 as a result of her employment duties with Defendant-Employer. The parties litigated the issue of compensability and on February 11, 2003 Deputy Commissioner Theresa B. Stephenson found and concluded that Plaintiff's bilateral carpal tunnel syndrome was compensable.
3. As a result of her compensable bilateral carpal tunnel syndrome, Plaintiff could not perform her pre-injury job due to her medical restrictions and was assigned to another job as Staff Assistant with a reduction in salary. Deputy Commissioner Stephenson concluded in a November 10, 2004 Opinion and Award, "If Plaintiff is unable to work due to her compensable injury, defendants shall pay all medical expenses, temporary disability benefits and permanent total and /or partial disability benefits plaintiff may incur in the future." This Opinion and Award was not appealed. *Page 5 
4. Plaintiff accepted the full-time position as Staff Assistant on September 27, 2001. Her job duties included answering the telephone, answering questions, directing people as they came into the office, assisting people in obtaining necessary forms, getting the mail, collecting fees, as well as performing other light-duty clerical responsibilities, such as typing forms and filing papers. Plaintiff worked in this position from 2001 through 2009. Plaintiff testified she had a lot of time where she had no duties to perform.
5. Plaintiff began treating with Dr. Peter Bronec on April 12, 2001 and has continued to treat with him. On July 10, 2006, Dr. Bronec diagnosed Plaintiff with bilateral carpal tunnel syndrome, left worse than right and right ulnar neuropathy without progression. On July 14, 2006, Plaintiff underwent a left carpal tunnel release. Following her carpal tunnel release, Dr. Bronec released Plaintiff to return to light duty with bilateral hand restrictions, including avoiding repetitive flexion and extension movements, avoiding strenuous grasping and restricting her lifting to ten-pounds. Plaintiff returned to work in her job as Staff Assistant, which was within her work restrictions.
6. On May 31, 2007, Plaintiff reported to Dr. Bronec that she was not ready to proceed with surgery on the right hand until she had reached maximum medical improvement with regard to her left hand.
7. Plaintiff began treating with Dr. Scott Sanitate, a physiatrist, on August 17, 2007. Plaintiff underwent limited median nerve conduction studies of the left upper extremity, which revealed normal findings. Plaintiff continued performing her duties as a Staff Assistant.
8. On May 27, 2008, Dr. Bronec indicated Plaintiff had reached maximum medical improvement as to her left hand and assigned a 15% permanent partial impairment rating to the left hand. Dr. Bronec continued Plaintiff's light duty work restrictions. With regards to *Page 6 
Plaintiff's right hand, Dr. Bronec recommended a right carpal tunnel release. He also referred Plaintiff for additional diagnostic testing, which was conducted by Dr. David Johnson at Raleigh Neurology Associates. The results of the EMG and Nerve Conduction Studies revealed evidence of very mild right median neuropathy at the wrist consistent with right carpal tunnel syndrome.
9. On January 26, 2009, Plaintiff returned to Dr. Bronec with continuing right hand problems and with a new complaint of right thumb stiffness. Plaintiff indicated she was ready to proceed with the right carpal tunnel release.
10. On April 14, 2009, Plaintiff presented to Dr. Kimberly Barrie, of Triangle Orthopaedic Associates, P.A., for evaluation of her right thumb stiffness. Dr. Barrie diagnosed Plaintiff with right carpal tunnel syndrome and right trigger thumb. Dr. Barrie injected Plaintiff's thumb and recommended a carpal tunnel release and right thumb A1 pulley release be performed simultaneously. Dr. Barrie recommended Plaintiff return to full duty work without restrictions. Dr. Barrie opined that Plaintiff, more likely than not, had right carpal tunnel syndrome, but he did not treat Plaintiff for carpal tunnel syndrome. The Full Commission gives no weight to Dr. Barrie's full duty release without restrictions in light of the permanent restrictions imposed by Dr. Bronec, which are given greater weight.
11. Plaintiff continued working in her job as Staff Assistant until May of 2009. At that time Defendant-Employer eliminated Plaintiff's Staff Assistant position, along with several other positions, due to general downsizing and budget constraints. However, Defendant-Employer wrote a memorandum on May 8, 2009, indicating that plaintiff was being "medically displaced" from her position. The memorandum states the following:
 Her treating physician has indicated that she has reached maximum medical improvement with the following permanent restrictions: No lifting over 10 pounds; no repetitive lifting with left hand; no strenuous grasping. These are some essential functions of her *Page 7 
current position that she is unable to perform. The PW Department Transportation Division is not able to accommodate the permanent restrictions at this time, therefore as per Restricted Duty policy PER-71, R 1; medical displacement is being initiated.
12. Plaintiff scheduled a right carpal tunnel release and right thumb A1 pulley release for May 15, 2009. Prior to undergoing the procedures, Plaintiff canceled after realizing Dr. Barrie performed the surgery on patients fully sedated. Plaintiff testified at the hearing before the Deputy Commissioner that due to a near-death experience in 1985, she only wanted to have the procedure performed under local anesthesia.
13. On June 24, 2009, the City of Durham Police Department offered Plaintiff a full-time position as a Police Records Specialist conditional upon the passing of psychological and medical examinations. Subsequently, Plaintiff received notice that the offer of employment was withdrawn and that her services with Defendant-Employer were being terminated as of June 30, 2009. Pursuant to correspondence from Defendant-Employer, the job offer was withdrawn because, "The Police Department will be unable to provide a reasonable accommodation for the position of Police Records Specialist that would maintain the performance of essential functions of the job."
14. Plaintiff requested a referral to a physician who would perform the right carpal tunnel release under local anesthesia. Subsequently, Defendants referred Plaintiff to Dr. Jon Kolkin, a board-certified orthopaedic surgeon, who performs the procedures under local anesthesia if medically appropriate. Plaintiff presented to Dr. Kolkin on February 2, 2010. Dr. Kolkin recommended additional diagnostic nerve tests in addition to his evaluation. As a result, Plaintiff underwent EMG and Nerve Conduction testing performed by Dr. Sanitate on February 19, 2010. The results of the diagnostic testing were interpreted as normal. Dr. Sanitate *Page 8 
opined that Plaintiff's examination and testing revealed no evidence of carpal tunnel syndrome, myopathy, or cervical radiculopathy.
15. On March 1, 2010, Plaintiff returned to Dr. Kolkin for a follow-up appointment. Based upon the diagnostic studies and his own examination of Plaintiff, Dr. Kolkin saw no evidence of carpal tunnel syndrome in Plaintiff's right hand. Dr. Kolkin testified that during the examination Plaintiff exhibited no response indicating nerve irritation when he performed a provocative test over the carpal tunnel nerve. Plaintiff's examination revealed no atrophy of the muscles in the right hand. Further, Plaintiff had unexplained giving way of the hand with no anatomic basis.
16. With regard to Plaintiff's right trigger thumb, Dr. Kolkin opined that the condition was not causally related to her employment with Defendant-Employer. Dr. Kolkin further opined that Plaintiff had no impairment rating to the right hand and released Plaintiff to return to work without restrictions.
17. Plaintiff sought an opinion from Dr. Diane Allen, an orthopaedic surgeon at Duke University Medical Center on March 4, 2010. The medical records indicate that Plaintiff's Phalen's test caused reports of numbness and tingling in the little fingers and the Tinel's test at Plaintiff's elbow revealed normal findings. At Plaintiff's request, Dr. Allen ordered new electrical studies. Dr. Allen did not perform or recommend any evaluations of Plaintiff's left hand.
18. On March 11, 2010, Plaintiff underwent repeat EMG and Nerve Conduction testing performed by Dr. Juan Gonzalez under the supervision of Dr. Vern Juel at Duke University. Dr. Juel concluded there was evidence of right median neuropathy of the wrist *Page 9 
consistent with mild right carpal tunnel syndrome. Based a review of the studies, Dr. Allen recommended not proceeding with right carpal tunnel release surgery.
19. On May 4, 2010, Plaintiff returned to Dr. Bronec, who diagnosed Plaintiff with persistent intractable right carpal tunnel syndrome and a new onset of tenderness over his thumb. He assigned permanent work restrictions to both hands of avoiding repetitive flexion/extension movements of the wrist and avoiding repetitive grasping or heavy lifting. The Full Commission accords great weight to these assigned restrictions. Dr. Bronec was unable to provide an opinion on the causal relationship between Plaintiff's employment and her right trigger thumb as the condition is outside his area of expertise.
20. Dr. Barrie opined that Plaintiff's right trigger thumb was, more likely than not aggravated by her employment with Defendant-Employer, but it was not caused directly from her work-related activities. When asked if there is a correlation between carpal tunnel syndrome and the development of trigger thumb, Dr. Barrie testified, "Not a direct correlation. One does not cause the other, but they typically are seen together because they're both due to an underlying inflammatory problem. So they're related but not directly causative." Dr. Barrie during cross examination stated that his opinion concerning aggravation is due to the history given by Plaintiff.
21. The Full Commission finds that the greater weight of the evidence does not establish a causal relationship between Plaintiff's employment duties and her right trigger thumb condition. Plaintiff had been performing light, non-repetitive work for a period of several years before she developed this condition.
22. The Full Commission finds that at the time Plaintiff was terminated from employment, she was under permanent work restrictions provided by Dr. Bronec. Defendants *Page 10 
were unable to accommodate Plaintiff's permanent, bilateral light duty work restrictions of avoiding repetitive flexion and extension movements, avoiding strenuous grasping and no lifting greater than 10 pounds. Defendants informed Plaintiff directly that her permanent work restrictions prevented her from performing the essential functions of her job as Staff Assistant and she was, therefore, being "medically displaced." Defendant-Employer subsequently notified Plaintiff on June 30, 2009 that the Police Department would not be able to offer her the job of Police Records Specialist because they could not provide the reasonable accommodations needed for her to be able to perform the essential job functions of the position and that her employment was terminated.
23. The Full Commission finds that following her termination, Plaintiff has searched for employment with Durham County, Verizon, Duke University, North Carolina Memorial Hospital, Family Dollar, North Carolina Central University and State Government, but has not obtained any employment. Plaintiff has made reasonable efforts to find suitable employment. As of the date of the hearing before the Deputy Commissioner on March 22, 2010, Plaintiff had not been able to secure employment due to her compensable bilateral carpal tunnel syndrome.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On or about June 12, 2000, Plaintiff contracted bilateral carpal tunnel syndrome due to causes and conditions which are characteristic of and peculiar to her employment with Defendant-Employer, and are not ordinary diseases of life to which the general public, not so *Page 11 
employed, is equally exposed. These conditions were previously found compensable by the Industrial Commission. N.C. Gen. Stat. § 97-53(13).
2. In this case, the medical evidence of record is insufficient to establish that Plaintiff's position as a Staff Assistant and the job duties associated therewith placed her at an increased risk of developing right trigger thumb when compared to the general public not so employed, or significantly contributed to the development of, or aggravation of her right trigger thumb condition. N.C. Gen. Stat. § 97-53(13); Rutledge,308 N.C. 85, 301 S.E.2d 359 (1983); Chambers v. TransitManagement, 360 N.C. 609, 636 S.E.2d 553 (2006).
3. On January 26, 2009, Plaintiff first complained to Dr. Bronec of right thumb stiffness. Plaintiff has failed to prove that this condition is an occupational disease or that it developed as a direct and natural result of her compensable bilateral carpal tunnel syndrome. For an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), it must be (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be "a causal connection between the disease and the [claimant's] employment."Rutledge v. Tultex Corp./Kings Yarn,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983) (citations omitted).
4. Plaintiff has also failed to prove that her right trigger thumb is a direct and natural consequence of her compensable bilateral carpal tunnel syndrome. Roper v. J.P. Stevens Co.,65 N.C. App. 69, 308 S.E.2d 485 (1983). Expert opinion that rests on speculation and conjecture, or unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury. Young v. Hickory Bus. Furn.,353 N.C. 277, 538 S.E.2d 912 (2000). *Page 12 
5. As previously determined by the Industrial Commission, Plaintiff is entitled to receive medical treatment that would tend to effect a cure, give relief or lessen her period of disability for her bilateral carpal tunnel syndrome, including future medical treatment. N.C. Gen. Stat. §§ 97-25, 97-25.1.
6. Plaintiff was terminated from her job with Defendant-Employer for reasons related to her compensable bilateral carpal tunnel syndrome. As a result of her compensable condition, she could not return to her job as Human Resource Technician, she was "medically displaced" from her job as Staff Assistant and she could not obtain the job of Police Records Specialist. The evidence shows that although she is capable of some work, Plaintiff has been unsuccessful in her search for suitable employment, after making reasonable efforts. Therefore, Plaintiff has proven continuing disability. "The term `disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2005). In order to support a conclusion of compensable disability, the Commission must find:
 (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.
Hilliard v. Apex Cabinet Co.,305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982).
7. An employee may meet his burden of proving disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable *Page 13 
of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
8. Based on the totality of the evidence of record, Plaintiff has satisfied prong two of Russell for the period July 1, 2009 through the present. Thus, Plaintiff is entitled to receive temporary total disability benefits from July 1, 2009, and continuing until such time as she returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
9. If a Plaintiff satisfies his burden of proof to establish one of the elements under Russell, the burden shifts to Defendants to "come forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one. . . ." Workman v. Rutherford Elec. Membership Corp.,170 N.C.App. 481, 613 S.E.2d 243 (2005), quoting Burwell v.Winn-Dixie Raleigh,114 N.C.App. 69, 73, 441 S.E.2d 145, 149 (1994). Defendants have not shown by the greater weight of the evidence that suitable jobs are available or that Plaintiff is capable of getting one. Id.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability benefits at the weekly compensation rate of $436.88 from of July 1, 2009, until such time as she returns to work or further Order of the Commission. *Page 14 
2. Defendants shall pay the medical expenses incurred or to be incurred by Plaintiff as a result of her compensable injuries when bills for the same have been submitted in accordance with Industrial Commission procedures.
3. A reasonable attorney's fee of 25% of the compensation due Plaintiff in Paragraph 1 is hereby approved for Plaintiff's counsel and shall be paid as follows: 25% of the accrued compensation due Plaintiff shall be deducted from and paid in one lump sum directly to Plaintiff's counsel. Thereafter, Plaintiff's counsel shall receive every fourth check.
4. Defendants shall pay the costs.
This the __ day of June 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1